NORTHERN SUPPLY COMPANY, Respondent, vs. WANGARD, Appellant.

*April 18—May 8, 1903.*

*Sales: Breach of implied warranty: Waiver: Receiving goods: Reasonable time for inspection: Notice of rejection.*

1. The purchaser of goods under an executory contract does not waive a breach of an implied warranty of quality by merely receiving the goods into his possession, but may take a reasonable time thereafter to discover departures from the agreed quality, even as to matters evidenced by external appearances, and to notify the vendor that such goods are not accepted as satisfying the contract.

2. If a person sells another property to be delivered, accompanying the sale with a warranty, and when delivery takes place there are defects therein discoverable by a person of ordinary intelligence in the circumstances of the purchaser by the exercise of ordinary care, and such other nevertheless accepts the property, neither objecting thereto then or within a reasonable time thereafter, nor notifying such person that the property will not be considered as in satisfaction of the contract, he thereby waives the defects so discoverable, precluding his thereafter rescinding the contract of sale, counterclaiming for damages when sued for the purchase price, or suing for damages for breach of warranty after paying for the property.

3. Ordinary care, as the term is used in the above rule, does not require inspection of the property in the sense of looking specially for defects therein. It requires only that the buyer shall see and take note of imperfections observable by ordinary application of the senses to external appearances.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Lincoln county: W. C. SILVERTHORN, Circuit Judge. *Reversed.*

Action to recover a balance of $144.26 claimed to be due for a quantity of potatoes sold by plaintiff to defendant, delivered on board cars at Tomahawk, Wisconsin, where the latter was engaged in the grocery business. Defendant counterclaimed that the potatoes were for use in his business as a retail grocer; that one car load thereof was guarantied to be good sound white stock suitable for such business; that the same proved upon examination, a few days after being received, not to be as warranted, but to be wholly unfit for the

purposes for which they were purchased; that by reason thereof he was damaged in the sum of $150, the difference between the actual value of the potatoes and what they would have been worth had they been as guarantied, $30 for loss by the defective potatoes being stored contiguous to good stock before discovery of the facts, cost of assorting the potatoes purchased so as to eliminate the defective ones, and the value of the labor required to dispose of the defective stock.

On the trial defendant's counsel rested his right to recover upon breach of implied warranty, requesting instructions on that theory, which were substantially given. Plaintiff's theory of the case was that the potatoes were sold under an executory contract, the title not to pass to defendant till he received the merchandise, hence that there was no implied warranty against defects discoverable by an ordinarily careful inspection; and that if there was a breach of express warranty, it was because of defects which were obvious and such breach was waived by acceptance of the potatoes without notice to plaintiff that the conditions of the warranty would be insisted upon. The court instructed the jury in harmony with that view. The jury rendered a verdict for plaintiff, assessing its damages at $100, and judgment was rendered accordingly.

For the appellant there were briefs by *G. M. Sheldon,* attorney, and *Flett & Porter,* of counsel, and oral argument by *Mr. Sheldon.*

For the respondent there was a brief by *A. H. Woodworth,* attorney, and *Curtis & Reid,* of counsel, and oral argument by *A. H. Reid.*

MARSHALL, J. Taking a general view of the instructions given in this case, which we are permitted to do within the scope of the exceptions thereto and the assignments of error, it appears that sufficient care was not used to carefully restrain the attention of the jury to the aspect of the evidence

tending to establish breach of implied warranty only. The rules governing such a warranty are radically different from those applicable to an express warranty. Where there is the latter in respect to any particular matter, it excludes the right that might otherwise exist to recover upon the former. Benjamin, Sales, § 672.

It is claimed by counsel for appellant that a recovery was sought on the counterclaim only upon implied warranty, and that the trial court intended to present only that aspect of the case to the jury. That is probably correct. We will treat the case upon that theory in disposing of the appeal.

The judgment must be reversed for error in the following instruction:

"At the time when the potatoes in question reached Tomahawk, ready for delivery to the defendant, it was the defendant's duty to make an inspection and examination of them before removing them or accepting them, and he is chargeable with knowledge of all facts in relation to the condition of the potatoes at that time, that would have been discovered by such an examination by a person of ordinary intelligence, exercising ordinary care."

That language, explained by a further instruction suggesting to the jury that it was permissible to hold that appellant was bound to examine the potatoes to the extent of inspecting them for hidden defects before even removing them from the car, in order to preserve the right to insist upon the implied warranty, gave an erroneously prejudicial idea of the law. Here is the explanatory instruction:

"If you shall find from all the evidence that by such an examination of the potatoes in question, as a person of ordinary intelligence, exercising ordinary care, would have made and would have discovered that these potatoes were defective, were to some extent hollow and had black stripes in them or were otherwise defective, then by accepting them and removing such potatoes, the defendant waived all right to object to the potatoes on the ground of such discoverable defects."

Counsel for appellant makes a wrong use of *Morehouse v. Comstock*, 42 Wis. 626, in referring thereto as applicable to an implied warranty. It is there plainly indicated that the doctrine as to waiver of defects by accepting goods delivered pursuant to an executory contract without protest and notification to the vendor that the goods will not be deemed accepted in satisfaction of the contract, does not apply to executed contracts. That was more fully explained in *Olson v. Mayer*, 56 Wis. 551, 14 N. W. 640, where *Morehouse v. Comstock* was referred to and commented upon.

It is conceded that the contract in question here was executory in character. The title to the potatoes did not pass from seller to buyer till the transit thereof ended at Tomahawk and the property was accepted by the purchaser, actually or constructively, in satisfaction of the contract. As to such a contract the rule as stated in *Locke v. Williamson*, 40 Wis. 377, and many other cases in this court, governs. *Olson v. Mayer, supra; McClure v. Jefferson*, 85 Wis. 208, 54 N. W. 777; *Buffalo B. W. Co. v. Phillips*, 67 Wis. 132, 30 N. W. 295; *Waupaca E. L. & R. Co. v. Milwaukee E. R. & L. Co.* 112 Wis. 469, 88 N. W. 308; *Bostwick v. Mut. L. Ins. Co.* 116 Wis. 392, 92 N. W. 246. The language of the rule as first formulated by this court was as follows:

"When the defects in the goods are patent and obvious to the senses, when the purchaser has a full opportunity for examination, and knows of such defects, he must, either when he receives the goods or within what under the circumstances is a reasonable time thereafter, notify the seller that the goods are not accepted as fulfilling the warranty; otherwise the defects will be deemed waived."

That has been changed somewhat by removing the feature contained in the literal sense at least of the quoted language, that there must not only be acceptance with full means of knowledge but with actual knowledge of the defects in order to waive the warranty in respect thereto, an idea which was

probably not intended to be embodied in the rule. Now it is understood that the maxim *caveat emptor* will apply as to patent defects if the purchaser has full means of knowledge thereof by the exercise of ordinary attention to his business, which requires him to at least look at what he buys as it comes into his possession, or when it is offered to him, or within a reasonable time thereafter, so as to observe patent imperfections if there are such. In the original statement of the rule the idea of the result of acceptance with knowledge and with means of knowledge should have been used in the disjunctive instead of the conjunctive. That is, a person is chargeable with knowledge of all that under the circumstances of the case he ought to know, and he is also chargeable with such knowledge as he in fact possesses, whether such possession is the result of the exercise of mere ordinary care or not.

There was a further development of the rule, so to speak, in *Olson v. Mayer,* 56 Wis. 551, 14 N. W..640, by an explanation to the effect that a mere objection to property offered in satisfaction of an executory contract for the sale thereof is not sufficient to prevent a waiver of patent defects if the property is in fact accepted. There must be more. There must be at least notice to the seller, within what under the circumstances is a reasonable time, that the property is not accepted as satisfying the contract of purchase. The rule was there further explained, and such explanation was followed in *Bostwick v. Mut. L. Ins. Co., supra,* to the effect that the mere taking possession of property, even with full opportunity then to observe that it is not according to the contract, does not waive patent defects where possession and time are necessary to separate the defective from the perfect portion and the purchaser elects to accept the former and reject the latter, and that merely receiving the property is not conclusive evidence of acceptance or waiver where possession is reasonably necessary in order to bring to the knowledge of the purchaser patent defects. That is within the general language of the rule that

the purchaser must at the time he receives the goods or within a reasonable time thereafter observe patent departures from the goods purchased which would ordinarily be observed by a person in handling his own property under the circumstances, if he were paying reasonable attention thereto, and at the time of such reception or within a reasonable time thereafter notify the seller either that the goods are not accepted at all or not accepted as satisfying the contract, or he will be held to have waived the patent defects.

In no case where this court has discussed the rule here involved is the idea advanced of inspection of property in the sense of looking specially for defects or the idea of discovering defects not observable by viewing external indications, unless it is in *McClure v. Jefferson,* 85 Wis. 208, 54 N. W. 777, in language there used, approving an instruction given by the trial court as substantially correct. It is plain, however, by the general treatment of the subject in the opinion, that there was no purpose in mind to extend the rule laid down in previous cases which were cited. In *Buffalo B. W. Co. v. Phillips,* 67 Wis. 132, 30 N. W. 295, the court explained that such rule does not apply to defects that are not obvious and patent within the strict meaning of those words,—defects that would attract the attention of a person in the exercise of ordinary care by applying his senses to the external appearances. It was said that defects in wire, apparent only by using it, and defects in the winding of rolls of wire apparent only on unwinding the rolls, were not such defects. One of the most recent cases decided by this court where the rule is stated is *Waupaca E. L. & R. Co. v. Milwaukee E. R. & L. Co.* 112 Wis. 469, 88 N. W. 308. This language was there used:

"If a person sells another property to be delivered, accompanying the sale with a warranty, and when delivery takes place there are defects in the property which are discoverable by a person of ordinary intelligence in the circumstances of

the purchaser, by the exercise of ordinary care, and such other nevertheless accepts the property, neither objecting thereto then nor within a reasonable time thereafter, he thereby waives the defects so that he can neither rescind the same, counterclaim for damages when sued for the purchase price, nor sue for damages for breach of warranty after paying for the property."

It would be well to read into that rule after the word "thereafter,"—"nor notifying such person that the property will not be considered as in satisfaction of the contract."

From what has been said it will be easily seen that when the trial court, in the quoted instructions, gave the jury to understand that it was permissible for them to find that appellant waived the warranty by taking the potatoes from the car, even as to defects discoverable only by examining the internal condition thereof, he went altogether too far. The mere act of taking the potatoes from the car did not waive anything, necessarily. It was proper for appellant to receive the potatoes into his possession and to take what under the circumstances was a reasonable time to observe their condition, even as to matters evidenced by the external appearance thereof, and to notify the respondent that the property, or a portion of it, was not accepted as satisfying the conditions of the purchase, without prejudice to his right to insist upon the warranty. The evidence is undisputed that within a very few days after the potatoes were taken from the car, and in the letter notifying the respondent of a return of the sacks in which they were shipped, the latter was advised that appellant would look to it to stand the loss from the potatoes not being such as he bargained for. That, obviously, was a sufficient notification to respondent that the potatoes, though received, were not accepted as satisfying the purchase contract.

The judgment must be reversed and the cause remanded for a new trial in accordance with the legal principles here stated.

*By the Court.*—So ordered.